UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISAC BRAVER, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

DIVERSIFIED ADJUSTMENT SERVICE, INC.,

    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/05/2023

7:22 CV 9390 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Isac Braver ("Plaintiff") commenced this class action lawsuit against Diversified Adjustment Service, Inc. ("Defendant"), alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by sending an undated collection letter and misleading Plaintiff regarding the specifics of his debt and his rights under the FDCPA. (ECF No. 1 at Exhibit A, Complaint "Compl.") Currently before the Court is Defendant's motion to dismiss Plaintiff's Complaint. (ECF No. 13.) After a careful examination of the applicable law and the facts alleged by Plaintiff, the Court GRANTS the motion and dismisses Plaintiff's claims for violation of 15 §§ U.S.C. 1692d, 1692e, 1692f, and 1692g without prejudice.

## BACKGROUND

    **I.  Procedural Background**

    On September 29, 2022, Plaintiff commenced this action in the Supreme Court of the State of New York by filing a Summons and Complaint, seeking damages and declaratory relief. (Compl. ¶¶ 3-17.) On November 11, 2022, Defendant timely removed the action. (ECF No. 1.) On November 7, 2022 and November 28, 2022, Defendant filed letter motions seeking an extension of time to answer or otherwise respond to Plaintiff's Complaint. (ECF Nos. 4, 6.) The Court granted both of these letter motions on November 7, 2022 and November 29, 2022, respectfully.

1

(ECF Nos. 5, 7.) On December 27, 2022, Defendant sought leave to file a motion to dismiss Plaintiff's Complaint (ECF No. 8), which the Court granted on January 5, 2023 (ECF No. 9). On March 23, 2023, Defendant filed its Motion to Dismiss (ECF No. 13), Memorandum of Law in Support ("Def. Mem.," ECF No. 14), and Reply ("Def. Reply," ECF No. 16). That same day, Plaintiff filed its Memorandum of Law in Opposition. ("Pl. Opp.," ECF No. 15.)

## II.    Factual Background

The following facts are drawn from Plaintiff's Complaint and are accepted as true for the purposes of this motion.

Some time prior to February 18, 2021, Plaintiff incurred a debt to Verizon Wireless ("Verizon"). (Compl. ¶¶ 20-24.) Verizon contracted with Defendant to collect the defaulted debt. (Compl. ¶ 25.) On a date unknown to Plaintiff, Defendant sent Plaintiff a collection letter (the "Letter") regarding the debt owed to Verizon. (Compl. ¶ 26.) The collection letter was undated, but stated in relevant part:

> You had an account with VERIZON WIRELESS with account number ************0001.
>
> | | |
> |---|---|
> | As of 02-18-2021 you owed: | $112.06 |
> | Between 02-18-2021 and today: | |
> | You were charged this amount in interest: | +$0.00 |
> | You were charged this amount in fees: | +$20.17 |
> | You paid or were credited this amount towards the debt: | - $0.00 |
> | The total amount of the debt now: | $132.23 |

(Compl. ¶ 27-29.) Because the Letter is not dated, Plaintiff could not determine from the Letter which date "today" and "now" referred to. (Compl. ¶ 29.) Plaintiff asserts that in failing to date the Letter, Defendant "withheld a material term from Plaintiff which made it confusing for him to understand the nature of the subject debt." (Compl. ¶ 37.) Furthermore, the undated Letter caused Plaintiff to "question[] the legitimacy of the debt collector's attempt to collect the alleged

debt" and "frustrated [] Plaintiff's ability to intelligently respond" to the Letter. (Compl. ¶¶ 31-35, 46, 50, 57.) In reliance of the Letter, Plaintiff did not pay the debt and instead used the funds he would have used to pay the debt for other purposes. (Compl. ¶¶ 52-53, 55.) Plaintiff alleges he suffered damages from Defendant's suspicious, misleading, deceptive, unfair, and unconscionable actions. (Compl. ¶ 45, 61.)

## LEGAL STANDARD

### III.     Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss under 12(b)(6) for "failure to state a claim upon which relief can be granted," the "Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 171 (S.D.N.Y. 2022). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. When applying these principles, the court should consider the specific facts that have been alleged in the complaint to determine if it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**DISCUSSION**

IV. **Article III Standing**

    a. *The Court may address the issue of Article III standing* sua sponte.

Article III of the United States Constitution limits the Court's judicial powers to resolving "cases or controversies." U.S. Const. art. III. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). The Court must ascertain whether the Complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).

Although Defendant moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court is obligated to consider *sua sponte* constitutional Article III standing to ensure that it possesses jurisdiction. *See Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (courts are "required to raise" threshold jurisdictional issues "*sua sponte*") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (where plaintiffs lack Article III standing, a court "has no subject matter jurisdiction to hear their claim" and so should raise the issue *sua sponte*); *Poindexter v. Nash*, 333 F.3d 372, 383 (2d Cir. 2003) ("Indeed, if the parties do not call a jurisdictional defect to the attention of the court, the court has the duty to raise it *sua sponte*.") (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)); *Simmonds v. I.N.S.*, 326 F.3d 351, 358 n.8 (2d Cir. 2003) ("Article III ripeness is a constitutionally mandated jurisdictional prerequisite, and so its absence must be noted by a court *sua sponte*.") (citing *Nutritional Health*

*Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)); *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006) ("Article III standing must be decided before the merits.").

      b. *To have standing, Plaintiff must allege that he suffered a concrete, particularized injury when asserting Defendant violated the FDCPA.*

To have standing, Plaintiff must allege that he suffered a concrete, particularized injury when asserting Defendant violated the FDCPA. Justice Kavanaugh, writing for the majority, put it succinctly in the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021): "[n]o concrete harm, no standing." He emphasized that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id.* at 2200 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–341, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016)). In *TransUnion*, a class of 8,185 plaintiffs had brought an action under the Fair Credit Report Act ("FRCA") alleging that TransUnion failed to use reasonable procedures to the ensure of accuracy of their credit files. Applying these principles, the Supreme Court held that only those plaintiffs who had their inaccurate credit reports disseminated to third-party businesses suffered a concrete, particularized injury sufficient to establish Article III standing. *Id.* at 2209. The Supreme Court reasoned that those who had their inaccurate credit reports disseminated "suffered a harm with a 'closer relationship' to the harm associated with the tort of defamation," while those that did not merely asserted a "risk of future harm" far too speculative to support Article III standing. *Id.* at 2209, 2211-12.

The Second Circuit addressed the implications of *TransUnion* in *Maddox v. Bank of N.Y. Mellon Tr. Co.*, N.A., 19 F.4th 58 (2d Cir. 2021). Reversing its previous decision, the Second

5

Circuit held mortgagors bringing suit against mortgagees for failing to timely record the mortgagors' satisfaction of their mortgages lacked Article III standing. *Id.* at 60. The Second Circuit concluded the plaintiffs did not suffer a concrete harm—they only alleged a "nebulous risk" of future harm" and emotional harms, without alleging any financial or reputational harm. *Id.* at 64-65.

In a more recent opinion, this Court addressed the issue of constitutional standing in the context of the FDCPA in *Grinblat v. Frontline Asset Strategies, LLC*, No. 7:22-CV-4467 (NSR), 2023 WL 5002474 (S.D.N.Y. Aug. 4, 2023).[1] The factual allegations in that case are strictly analogous here: the plaintiff alleged he received an undated debt collection letter from defendants, third-party debt collectors, in violation of the FDCPA. *Id.* at *1. In *Grinblat*, this Court determined the plaintiff did not suffer a concrete, particularized injury in alleging that the defendants' failure to date the debt collection letter "caused him to expend time to ascertain his options and possible responses, impaired his ability to intelligently respond to Defendants' collection efforts, and generally confused and misled him." *Id.* at *3 (cleaned up). As in *TransUnion* and *Maddox II*, this Court concluded "[g]iven the absence of a concrete injury, such as a claim of reputational or monetary harm, Plaintiff's assertions fail to meet the threshold required to establish standing under Article III." *Id.* at *4. The Court reaches the same conclusion here.

---

[1] The Court's decision in *Grinblat* also discussed decisions from Second Circuit district courts analyzing whether the plaintiff alleged he or she suffered a concrete harm sufficient to confer Article III standing in the context of the FDCPA and the Fair Credit Reporting Act ("FCRA"). *See Williams v. Portfolio Recovery Assocs., LLC*, No. 21-CV-5656(DRH), 2022 WL 256510, *2-*4 (E.D.N.Y. Jan. 27, 2022) (plaintiffs' allegations that defendant disseminated inaccurate information regarding an alleged debt to a third party insufficient to establish a concrete harm); *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313(JS)(ST), 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022) ("[A]bsent allegations that plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing."); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F.Supp.3d 387, 391-92 (E.D.N.Y. Feb. 3, 2022) (plaintiff lacked Article III standing where plaintiff made conclusory allegations of mental and emotional harm, failed to allege actual dissemination to third parties, and failed to allege he suffered concrete consequences from a lower credit score).

> c. *Plaintiff has failed to allege he suffered a concrete, particularized injury, and therefore lacks Article III standing.*

To allege a concrete, particularized injury sufficient to confer Article III standing, Plaintiff must allege specific evidence of reputational or monetary harm. *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *6-8 (S.D.N.Y. Mar. 11, 2022) (noting that, "cases in the Second Circuit brought in the context of financial credits, including claims specifically brought pursuant to both the FDCPA and the FCRA, an analogous statute, have uniformly held that, absent specific evidence of reputational or monetary harm, plaintiffs lack standing under *Transunion*"). Plaintiff fails to do so, and therefore the Court must dismiss his claim for lack of standing.

Beyond his allegations of experiencing general confusion, Plaintiff alleges he "expend[ed] time and money" (1) "to ascertain what his options and possible responses could or should be," (2) "to mitigate the risk of future financial harm in the form of dominion and control over his funds," and (3) "to mitigate the risk of future financial and reputational harm in the form of debt collection informational furnishment, and ultimate dissemination, to third parties." (Compl. ¶¶ 48, 54, 56, 58.) Additionally, Plaintiff's failure to pay the debt—due to Defendant's allegedly deceptive, misleading, and unfair representations—resulted in "Defendant's furnishment, and ultimate dissemination, of negative credit reporting to the Plaintiff's financial and reputational detriment." (Compl. ¶ 59.)

At the outset, confusion is insufficient to confer standing for FDCPA claims. *Cavazzini v. MRS Associates*, 574 F.Supp.3d 134, 144 (E.D.N.Y. 2021) (citations omitted). While some courts have recognized time, money, and effort spent mitigating risks are concrete harms, "expenditure of time alone is insufficient unless it is inextricably linked to a concrete, tangible injury, such as where a plaintiff faces a sufficient risk of harm, and then spends time, money, and effort mitigating that risk." *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22CV1156PKCCLP, 2022 WL

1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (citation omitted). Time and money spent due to concern and confusion are not concrete harms. *Id.*; *see also*, *Grinblat*, 2023 WL 5002474 at *3 (loss of time insufficient to demonstrate a substantial, concrete harm).

Nor has Plaintiff plead he suffered a reputational harm. As discussed above, dissemination of a negative financial report may constitute a cognizable harm. *See TransUnion*, 141 S. Ct., at 2208-2209. However, Plaintiff fails to identify *how* or to *whom* Defendant allegedly disseminated his negative credit report. A negative credit reporting in and of itself cannot form the basis of Article III standing. *Maddox II*, 19 F.4th at 65 (that a creditor may access an inaccurate mortgage record is a "nebulous risk of future harm" that, if not materialized, cannot form the basis of Article III standing); *Grauman v. Equifax Info. Servs., LLC*, 549 F. Supp. 3d 285, 291-92 (E.D.N.Y. 2021) (improper notation on plaintiff's credit report and resulting drop in credit score insufficient to establish a concrete reputational injury). Short of an individual or entity viewing the negative credit reporting, Plaintiff cannot claim that he suffered a concrete injury. *Maddox II*, 19 F.4th at 65 (no concrete injury where, although an inaccurate record was available for public viewing, it was not evident that anyone actually viewed it).

Finally, Plaintiff alleges he suffered "concrete and particularized harm, *inter alia*, because the FDCPA provides Plaintiff with the legally protected right not to be misled or treated unfairly with respect to any action for the collection of any consumer debt." (Compl. ¶ 49.) This conclusory allegation also fails—it is well settled that a plaintiff does not satisfy the injury-in-fact requirement merely because a statute grants a statutory right and the ability to vindicate that right. *Maddox II*, 19 F.4th at 63 (citing *TransUnion*, 141 St. Ct. at 2205).

Plaintiff asserts conclusory allegations raising speculative harms that fail to demonstrate he suffered a concrete, particularized injury. In his Complaint, Plaintiff repeatedly asserts the

various consequences of the confusion and uncertainty caused by the undated letter but fails to plead specific facts sufficient to support any materialized harms. *Maddox II*, 19 F.4th at 65 (Plaintiff "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief."). Accordingly, the Court finds that Plaintiff has failed to sufficiently plead a concrete, particularized injury for his claims, and therefore lacks Article III standing to bring this action.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's claims for alleged violations of the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g is GRANTED without prejudice. Plaintiff is granted leave to file an Amended Complaint on or before January 8, 2024, consistent with this order. Plaintiff is advised that the Amended Complaint will replace, not supplement, the original Complaint. Thus, any claims he wishes to pursue must be included in the Amended Complaint. If Plaintiff fails to timely file an Amended Complaint, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice. Defendant is directed to answer or otherwise respond by February 7, 2024.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 13.

SO ORDERED.

Dated:  December 5, 2023
　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　United States District Judge